**PARKS SCHOOL OF BUSINESS, INC., dba Parks College, a New Mexico corporation, Plaintiff–Appellant,**

v.

**Fife SYMINGTON; Roy A. Nicholson; Sally Hein, et al., Defendants– Appellees.**

No. 93–16877.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 16, 1995.

Decided April 11, 1995.

David O. Drake, Salt Lake City, Utah, for plaintiff-appellant.

Richard A. Segal and Gust Rosenfeld, Phoenix, AZ, for USAF defendants-appellees.

Michael G. Prost and Thomas J. Dennis, Asst. Attys. Gen., Phoenix, AZ, for defendant-appellee Symington.

Before: NORRIS, WIGGINS and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Parks School of Business appeals the district court's dismissal of its complaint against Arizona Governor Fife Symington, United Student Aid Funds, and various of its officials for failure to state a claim.[1] It also contends that if dismissal was proper, it should have been without prejudice so that Parks could file an amended complaint revising its allegations that the defendants unconstitutionally terminated Parks' participation in a federal student loan guarantee program. We affirm in part, reverse in part, and remand.

## BACKGROUND

Parks, a private junior college, is a New Mexico corporation. Although its main place of business is in Albuquerque, New Mexico, it also has a campus in Tucson, Arizona, the site involved in this litigation.

Since 1981, USAF, doing business as Arizona Education Loan Program, has been Arizona's designated guarantor of student loan programs. All of USAF's government funding comes from the federal government.[2] USAF manages and operates a program for the guarantee of loans made by participating lenders on behalf of Arizona residents and others who are attending eligible institutions of higher learning in the State of Arizona. Parks contends that it was at all times relevant to this action an eligible institution by virtue of its ongoing participation agreement with the Secretary of the U.S. Department of Education. *See* 20 U.S.C. § 1094.

On or about February 18, 1992, USAF terminated Parks' participation in the Arizona loan guarantee program. Parks had been part of the program since 1989. On August 10, 1992, Parks filed this action. The complaint was amended to its current form on September 2, 1992. Parks alleged that by terminating its participation in the program without a hearing, USAF had denied Parks due process under the Fifth and Fourteenth Amendments and had violated 42 U.S.C. § 1983. It further alleged that the actions were taken in violation of the Equal Protection Clause and 42 U.S.C. § 1981 because most of Parks' students are minorities. Parks sought damages and injunctive and declaratory relief from various defendants. It also sought relief from Governor Symington because he had signed an agreement with USAF that designated it as *the* loan fund guarantor in Arizona.

Governor Symington filed a motion to dismiss, as did USAF. Parks filed a motion for partial summary judgment. On January 25, 1993, the district court held a hearing on the motions to dismiss, at which time it orally granted them. In dismissing the complaint, the court found that the Higher Education Act (HEA) does not provide a private right of action to parties in Parks' position. It also ruled that no action or conduct complained of had taken place under color of state law. It did not directly address the § 1981 claim. The district court filed its final order granting the motions to dismiss with prejudice on September 1, 1993, and this appeal followed.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

---

1. United Student Aid Funds and its officials will be referred to as USAF.

2. The funding is pursuant to the Higher Education Act, 20 U.S.C. § 1070 *et seq.* Certain sections of the HEA were amended effective July 1992. Because Parks was terminated in February 1992, the amendments are not relevant here.

■ A dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is a ruling on a question of law and as such is reviewed de novo. *Everest & Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir.1994). We take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party. *Id.* A complaint should not be dismissed unless a plaintiff could prove no set of facts in support of his claim that would entitle him to relief. *Id.* When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal was proper without converting the motion to one for summary judgment. *Cooper v. Bell*, 628 F.2d 1208, 1210 n. 2 (9th Cir.1980).

## DISCUSSION

A. *Private Right of Action Under the Higher Education Act*

■ There is no express right of action under the HEA except for suits brought by or against the Secretary of Education. *See* 20 U.S.C. § 1082(a)(2). The district court found that no private right of action for educational institutions to sue loan guarantors was implied in the statute. We agree.

■ In determining whether a federal statute confers an implied right of action, we apply the four-factor test enunciated by the Supreme Court in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). *See also Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 n. 9, 110 S.Ct. 2510, 2517 n. 9, 110 L.Ed.2d 455 (1990) (distinguishing *Cort* test, used to determine whether a private right of action is implied in a federal statute, from analysis used to determine whether suit may be brought under 42 U.S.C. § 1983 for the violation of a particular federal statute).

First, we consider whether the plaintiff is one of the class for whose especial benefit the statute was enacted. Second, we examine legislative history to see if we can discern any intent either to create or to deny a right of action under the statute. Third, we weigh whether implying a right of action would be consistent with the purposes of the legislative scheme. Finally, we determine whether the cause of action is one traditionally relegated to state law, so that it would be inappropriate to infer a cause of action based solely on federal law. *See Cort*, 422 U.S. at 78, 95 S.Ct. at 2088.

■ These factors are not given equal weight; the critical inquiry is congressional intent. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 377–78, 102 S.Ct. 1825, 1838–39, 72 L.Ed.2d 182 (1982). Moreover, we have recognized that before a private cause of action may be inferred from a statute, "ineluctable inferences [must] arise from the Act to compel such a finding." *Miscellaneous Serv. Workers Local # 427 v. Philco–Ford Corp.*, 661 F.2d 776, 781 (9th Cir.1981). If the statute itself provides "a particular remedy or remedies," we should not add others. *Id.* (citation omitted).

■ The first *Cort* factor does not help Parks. Clearly, the HEA was enacted to benefit students. *See* 20 U.S.C. §§ 1070(a), 1071(a)(1). It is true that the Act itself recognizes that one primary method of helping students is to "provid[e] assistance to institutions of higher education." *Id.* § 1070(a)(5). Nonetheless, schools are not among the class for whose *especial* benefit the statute was enacted. *See Saint Mary of the Plains College v. Higher Educ. Loan Program, Inc.*, 724 F.Supp. 803, 807 (D.Kan. 1989).

■ Parks fares no better under the second and third factors, which blend together to some extent in this case. The legislative history behind the HEA is silent on the issue of private rights of action. *Id.* When a statute expressly provides for particular means of enforcement, we must be chary of reading additional ones into it. *See Transamerica Mortgage Advisors v. Lewis*, 444 U.S. 11, 19–20, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979); *see also Assassination Archives & Research Ctr. v. Department of Justice*, 43 F.3d 1542, 1543–45 (D.C.Cir.1995) (declining to read a private right of action into the JFK Act because Congress provided for specific remedies in the statute); *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131–32 (9th Cir.1994) (declining to read a private right of action into the Federal Credit Union Act in part because Congress provided for particular remedies in the statute).

In § 1082, the Secretary of Education is given wide-ranging authority to enforce the provisions of the Act. That includes avenues of redress for the alleged violations of the Act complained of by Parks. *See* 20 U.S.C. § 1082(g)(1)(A), (h)(3); *see also id.* § 1094(c). Furthermore, the statute expressly contemplates the very problem involved here. Section 1094 of the Act governs how a school becomes an eligible institution in order to be able to participate in programs governed by the Act. After the Secretary has determined an institution to be eligible, a guarantee agency may nonetheless terminate or impose limitations on the school's eligibility under § 1078(b)(1)(T), as apparently happened here. Then, according to § 1082(h)(3)(A), the Secretary conducts a review of the limitation or termination imposed by a guaranty agency—such as USAF—upon an eligible institution—such as Parks. That review is pursuant to the requirements of the Administrative Procedure Act, 5 U.S.C. §§ 556 and 557. The Secretary has created a procedural scheme for that review, *see* 34 C.F.R. §§ 682.713, 668.86 *et seq.*, and, of course, judicial review follows, *see* 20 U.S.C. § 1082(a)(2); *see also Continental Training Servs., Inc. v. Cavazos,* 893 F.2d 877, 892 (7th Cir.1990); *Pro Schools, Inc. v. Riley,* 824 F.Supp. 1314 (E.D.Wis.1993). If Parks believed that it had been slighted at any point in this process, its remedy was to sue the Secretary.

It is this extensive web of enforcement mechanisms that both illuminates congressional intent and tips the third *Cort* factor against Parks. As the court noted in *Saint Mary of the Plains,* 724 F.Supp. at 808:

> In light of the extensive enforcement authority given to the Secretary under this program, this court is convinced that Congress intended this mechanism to be the exclusive means for ensuring a lender's compliance with the statutes and regulations. The implication of a private cause of action would seriously undercut, rather than complement, the Secretary's enforcement powers. For example, there would be little chance of a lender later curing or correcting its violation or compromising with the Secretary, if the lender was already entangled in litigation on the same matter with an institution and particularly if any correction or compromise could possibly constitute an admission of fault in any other litigation.

Moreover, allowing a direct action against a loan guarantee program such as the one Parks seeks to bring here is unlikely to significantly advance any of the goals of the statute, as laid out in § 1071(a)(1). Any problem Parks sees can (and should) be resolved through the process provided for in the statute.

It is true that Parks' claims center on what it alleges was USAF's denial of its procedural due process rights. Those rights do emanate from the Constitution and are traditionally matters of federal concern. However, if the difficulty is simply that USAF did not follow the guidelines required by the statute and regulations, ·that issue should have been presented to the Secretary, who was in a position to correct the problem. *See, e.g., Vargas v. INS,* 831 F.2d 906, 907–08 (9th Cir.1987); *Reid v. Engen,* 765 F.2d 1457, 1460–61 (9th Cir.1985). Thus, the fourth *Cort* factor may weigh slightly in Parks' favor. The balance, however, tips sharply in favor of a determination that Congress did not intend to create an implied right of action in the HEA for institutions and against loan guarantee programs. We decline to infer any such right. To do so would be to render the pellucid congressional scheme caliginous.

### B. *Section 1983*

"A plaintiff alleging a violation of a federal statute will be permitted to sue under § 1983 unless (1) 'the statute [does] not create enforceable rights, privileges, or immunities within the meaning of § 1983' or (2) 'Congress has foreclosed such enforcement of the statute in the enactment itself.'" *Virginia Hospital Ass'n,* 496 U.S. at 508, 110 S.Ct. at 2517 (citations omitted) (alteration in original).

Assuming arguendo that neither of these exceptions applies here, the district court nonetheless did not err when it granted the defendants' motions to dismiss the counts based on § 1983 because the complaint contains insufficient allegations showing that the defendants acted "under color of state law," as the statute requires.

As alleged in the complaint, USAF is a private, nonprofit Delaware corporation. It does not receive any funding from the State of Arizona. Its agreement to serve as the loan guarantor for the State of Arizona is made with the Secretary of Education, not with the State itself. 20 U.S.C. § 1078(b)(1); 34 C.F.R. §§ 682.400, 682.401. Under the Act, the State has no powers to regulate or supervise USAF's activities in any way, and no state officials take part in USAF's operations. The function that USAF serves is not exclusively a "public" one; § 1078(b)(1) provides that *either* the State *or* a private organization or institution may serve as a loan guarantor.

■ The Supreme Court has articulated "four different factors or tests to determine state action" and thus to decide whether a private entity acted under "color of state law." *Gorenc v. Salt River Project Agric. Improvement & Power Dist.*, 869 F.2d 503, 506 (9th Cir.), *cert. denied*, 493 U.S. 899, 110 S.Ct. 256, 107 L.Ed.2d 205 (1989). Under the first test, we consider the nexus between the State and the challenged action. *Id.* Here, the complaint makes no allegation that the State in any way participated in the decision to terminate Parks, nor was the termination made pursuant to any state regulation or policy. Thus, there is no nexus between the State and the challenged termination. *See Rendell–Baker v. Kohn*, 457 U.S. 830, 840–43, 102 S.Ct. 2764, 2771–72, 73 L.Ed.2d 418 (1982) (no state action where school, which was heavily regulated by the State and received funding from it, fired teachers).

■ The Supreme Court has also considered whether "the state has 'so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity.'" *Gorenc*, 869 F.2d at 507 (citation omitted) (alteration in original). This occurs when the state knowingly accepts the benefits derived from unconstitutional behavior. *Id.* Here, the benefits of USAF flow directly to students, not to the State itself. Although in a broad sense USAF can be said to confer a public benefit, that is not enough to equal state action. *Id.* at 508; *Jackson · v. Metropolitan Edison Co.*, 419

U.S. 345, 352–53, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974). In *Gorenc* we dealt with an irrigation district that actually acted like a governmental entity for some purposes. 869 F.2d at 507. We said that the entity's limited sovereign powers "allow it to operate so that it can benefit the landowners who run and benefit from Salt River but they do not create joint action between Salt River and the State." *Id.* at 508. That is even more true in this case. USAF's activities benefit students and, more indirectly, schools, and that is undoubtedly good for the State's residents. But USAF has *no* sovereign powers and does not even derive its authority from the State. There is no joint action.

■ A third approach is to examine whether the private actor is functioning as the government. *Id.* In order for the performance of a public function to result in state action, the function must traditionally be the exclusive prerogative of the state. *Rendell–Baker*, 457 U.S. at 842, 102 S.Ct. at 2772. Here, the alleged public function is not the exclusive prerogative of the state for two reasons. The federal government is involved in providing student loan insurance; the State did not confer a former state function on USAF. Also, the HEA directs that within any given state, *either* the state or a private institution or institutions may guarantee student loans. *See* 20 U.S.C. §§ 1072(a)(1), 1078(b)(1). Lending and guaranteeing loans, even to students, is not a function that is traditionally performed only by governmental entities. Thus, the public function test does not point to state action.

■ Finally, the state compulsion test considers whether some state regulation or policy compelled the offensive action. *Gorenc*, 869 F.2d at 508. As already discussed, it did not; in fact, the State compelled no action at all. For all of these reasons, we conclude that USAF is not a state actor, and no state action occurred when it terminated Parks.

■ The action against Governor Symington is similarly misdirected. The State of Arizona has neither the duty nor the authority to oversee the administration by USAF of a federally funded and mandated student loan program. Because Arizona does not have its own student loan insurance program,

the Secretary of Education entered into an agreement with USAF to provide a program. *See* 20 U.S.C. § 1072(a)(1), (c)(6). The Secretary funds the initiation of the program within the State, and the funds go directly to the designated entity and do not pass through the State. *Id.* The State itself has no supervisory duties over the program; the provision of the HEA pointed to by Parks as mandating supervision, § 1078(b)(1)(K), on its face applies only to state programs. Arizona has no state program; that is why the Secretary has entered into an agreement with USAF. Parks contends that a state program was created when the State and USAF entered into the "Arizona Designated Guarantor Agreement." But the HEA draws a distinction between those with whom the Secretary contracts, the state or a private institution or organization. The State of Arizona has no agreement with the Secretary, USAF does. Thus, § 1078(b)(1)(K) does not apply.

■ Nowhere else in the HEA is a state without a state program given any authority to supervise a designated guarantee agency. Nor does the agreement between the State and USAF give the State any supervisory powers over USAF"s activities; in fact, it indicates that USAF has "sole and exclusive responsibility for the administration" of the program. That agreement does require that USAF make periodic reports of its activities to the State and further sets forth a list of what USAF must do in the administration of the program. However, none of that provides for regulation by the State, and the list generally limits USAF"s duties to those required by the HEA itself. Indeed, the State asserts that the agreement is merely ceremonial. It is apparent that the State did not undertake to and does not involve itself in the operation of USAF or in its termination decisions. That is not surprising because, again, § 1082(h)(3) provides that the Secretary may review limitation and termination actions taken by any guarantee agency. The

State of Arizona is neither the Secretary nor a guarantee agency and thus had no power to affect or review the termination at issue here. For these reasons, the § 1983 claim against Governor Symington was properly dismissed, along with that against the USAF defendants.

### C. *Section 1981*

■ USAF argues, and presumably the district court determined, that Parks' complaint under § 1981 was deficient because it did not sufficiently allege that race discrimination lay at the bottom of the termination decision.[3] We disagree. In order to withstand a motion to dismiss for failure to state a claim, a § 1981 cause of action need only allege "that plaintiff suffered discrimination ... on the basis of race." *Karim–Panahi v. Los Angeles Police Dep't,* 839 F.2d 621, 625 (9th Cir.1988). The complaint alleges that the defendants took the disputed actions "based on the fact that plaintiff is a proprietary postsecondary institution catering to minority and inner-city students, which students traditionally have a higher default rate than nonminority students." It further alleges that USAF acted "because [Parks] primarily teaches minority and inner-city students." These allegations are sufficient to survive a motion to dismiss for failure to state a claim.

However, says USAF, if anyone is being discriminated against it is the students because it is their loan guarantees that are being denied. Thus, it reasons, Parks cannot sue because it has no standing to assert someone else's claims.[4] But this case is remarkably like *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). There students were prevented from attending a school by a law that required public school attendance. *Id.* at 530–31, 45 S.Ct. at 572. Here students are prevented from attending a school by an action of USAF, which refused to guarantee their

---

**3.** USAF does not assert that a § 1981 claim must allege that the defendant acted under color of state law. *See* 42 U.S.C. § 1981(c); *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 436, 88 S.Ct. 2186, 2201, 20 L.Ed.2d 1189 (1968). Nor does USAF assert that a § 1981 claim cannot be premised upon a violation of another federal statute. *Cf. McAlester v. United Air Lines, Inc.,*

851 F.2d 1249, 1253 (10th Cir.1988). Thus, those issues are not before us.

**4.** It is not at all clear that Parks raised the issue of third-party standing before the district court. If it did not, it has waived the argument on appeal. *See Board of Natural Resources v. Brown,* 992 F.2d 937, 946 (9th Cir.1993).

loans if they do. In *Pierce* the argument against standing was made on the ground that the school could not assert the students' rights. *Id.* at 535, 45 S.Ct. at 573. Here the same argument is made. In *Pierce* the Supreme Court said:

[The schools] have business and property for which they claim protection. These are threatened with destruction through the unwarranted compulsion which appellants are exercising over present and prospective patrons of their schools. And this court has gone very far to protect against loss threatened by such action. . . .

. . . .

. . . Appellees asked protection against arbitrary, unreasonable, and unlawful interference with their patrons and the consequent destruction of their business and property. Their interest is clear and immediate. . . .

*Id.* at 535–36, 45 S.Ct. at 573–74. We can say no less and can say it no better. *See also Griswold v. Connecticut,* 381 U.S. 479, 481, 85 S.Ct. 1678, 1680, 14 L.Ed.2d 510 (1965) (citing cases); *Construction Indus. Ass'n v. City of Petaluma,* 522 F.2d 897, 904–05 (9th Cir.1975) (finding no standing to assert others' constitutional rights but indicating that situation would be different were it a case like *Pierce* ), *cert. denied,* 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed.2d 342 (1976).

Nor does it matter that *Pierce* was brought directly on the Constitution and this case is brought under § 1981. Standing is not affected by *that* difference. *See, e.g., Gersman v. Group Health Ass'n,* 931 F.2d 1565, 1568 (D.C.Cir.1991), *vacated on other grounds,* 502 U.S. 1068, 112 S.Ct. 960, 117 L.Ed.2d 127 (1992) (if a corporation was injured by racial discrimination against a shareholder it had standing to sue under § 1981, regardless of a claim that it had no racial identity); *Des Vergnes v. Seekonk Water Dist.,* 601 F.2d 9, 13–14 (1st Cir.1979) (if corporation is injured by racially discriminatory intent because it makes contracts with nonwhites it has standing to sue under § 1981).

Here Parks claims that USAF has taken action against it because it contracts with minority students. In other words, it presents a classic case of a corporation that is injured by racially discriminatory intent.

That is sufficient to withstand USAF's 12(b)(6) motion.

The district court erred when it dismissed Parks' § 1981 claim against USAF. That is particularly so because the court did not even allude to possible deficiencies. However, because Governor Symington had no connection to the actions taken by USAF, the dismissal of Parks' § 1981 claim against him was proper.

D. *Dismissal with Prejudice*

Parks finally objects to the dismissal of its claims with prejudice. At the January 25, 1993, hearing on the motions to dismiss, the court orally granted them but did not say it was doing so with prejudice. The proposed order lodged by the defendants on February 2, 1993, provided for dismissal with prejudice. Nonetheless, Parks did not request leave to amend its complaint at the hearing, nor did it mention the "with prejudice" provision in the objections it raised to the defendants' proposed order. In fact, nearly seven months elapsed between the date the proposed order was lodged and the date the final order was signed. Far from objecting, Parks requested that the order be signed. As a result, Parks has waived the right to object on appeal to the fact that the dismissal was with prejudice. *See Animal Protection Inst. v. Hodel,* 860 F.2d 920, 927 (9th Cir. 1988).

We will review an issue that has been raised for the first time on appeal under certain narrow circumstances. They are (1) to prevent a miscarriage of justice; (2) when a change in law raises a new issue while an appeal is pending; and (3) when the issue is purely one of law. *Jovanovich v. United States,* 813 F.2d 1035, 1037 (9th Cir.1987). The first two exceptions clearly do not apply. Although the question of whether the dismissal should have been without prejudice is one of law, there is also a factual component—just what added facts could be pled to save the case? Parks has offered no indication of how it would amend its complaint to cure the deficiencies that necessitated dismissal of most of the claims in the first place, and no curative amendments come to mind.

On the contrary, the defects in Parks' claims (other than the § 1981 claim) are at their very core.

### E. *Attorney's Fees*

Governor Symington and Parks have requested their attorney's fees incurred in the appeal, under 42 U.S.C. § 1988.

■ Parks is not entitled to attorney's fees because it is not the "prevailing party." In order to qualify as the prevailing party, a plaintiff must have succeeded on the merits of at least some of its claims. *See Hewitt v. Helms*, 482 U.S. 755, 760, 107 S.Ct. 2672, 2675, 96 L.Ed.2d 654 (1987); *Makah Indian Tribe v. Verity*, 910 F.2d 555, 560 (9th Cir. 1990). Parks has not yet done so.

■ A prevailing defendant is entitled to attorney's fees under § 1988 only when the action is "groundless, without foundation, frivolous, or unreasonable." *McCarthy v. Mayo*, 827 F.2d 1310, 1318 (9th Cir.1987). Fees are warranted when the result of the action was obvious and the arguments on appeal wholly lack merit. *Id.* Here, there was very little case law directly apposite, and Parks was able to point to at least peripheral involvement by the State in the loan guarantee program. The appeal was not frivolous, and Governor Symington is not entitled to an award of attorney's fees.

### CONCLUSION

Because this case comes to us on appeal from a grant of motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), we cannot comment upon the merits of the dispute between Parks and USAF. We do hold, however, that Parks does not have a private cause of action against USAF pursuant to the student loan provisions of the HEA.

Moreover, Parks has failed to allege sufficient facts to show that USAF's actions were state action, so any claim based upon 42 U.S.C. § 1983 was also ineffective. However, it has alleged facts sufficient to go forward with a claim under 42 U.S.C. § 1981. For that reason we must reverse the district court's dismissal of that claim against USAF.

Parks' inability to connect USAF's actions to the State of Arizona also means that its attempt to obtain injunctive, declaratory or other relief against Governor Symington in his official capacity must come to naught.

We therefore uphold the district court's order in all respects other than its dismissal of Parks' § 1981 claim against USAF and its officials with prejudice.

AFFIRMED in part, REVERSED in part and REMANDED. The parties shall bear their own costs on appeal.