**PERFECT 10, INC., Plaintiff,**

v.

**CYBERNET VENTURES, INC., et al., Defendants.**

**No. CV 01–02595 LGB(SHX).**

United States District Court, C.D. California.

Sept. 26, 2001.

Jeffrey N. Mausner, Laurence M. Berman, John R. Yates, Berman, Mausner & Resser, Ronald Johnston, John J. Quinn, Daniel J. Cooper, Arnold & Porter, Los Angeles, CA, for Plaintiff.

William J. Robinson, Steven O. Kramer, Victor de Gyarfas, Thomas D. Theisen, Mayer, Brown & Platt, Los Angeles, CA, for Defendants.

ORDER DENYING IN PART AND GRANTING IN PART CYBERNET VENTURES, INC.'s MOTION TO DISMISS AND MOTION FOR A MORE DEFINITE STATEMENT AND DENYING CYBERNET'S EX PARTE "SUGGESTION OF LACK OF JURISDICTION"

BAIRD, District Judge.

## I. INTRODUCTION

This action springs from Perfect 10, Inc.'s ("Perfect 10") allegations that defendant Cybernet Ventures, Inc. ("Cybernet"), a corporation running a web-service called "Adult Check," and other defendants infringe Perfect 10's copyrights, violate Perfect 10's trademark rights and otherwise engage in rampant unfair business practices.

Currently before the Court is Cybernet's motion to dismiss under Rule 12(b)(6) or, in the alternative for a more definition statement, further supporting papers, and Perfect 10's opposition papers.

## II. FACTUAL BACKGROUND

The following facts are taken from Perfect 10's Second Amended Complaint ("2AC"), drawing inferences in Perfect 10's favor:[1]

Perfect 10 publishes an adult magazine and runs an internet website. 2AC ¶ 17. Both the magazine and the website share the Perfect 10 name. *Id.* The magazine's circulation exceeds 90,000 per issue, while the website receives over 100,000 different visitors each month. *Id.*

---

1. *See Parks Sch. of Bus., Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995)

Perfect 10 has registered copyrights in its magazines, as well as some videos and calendars. *Id.* ¶¶ 18, 67, Ex. C. Perfect 10 claims that these copyrights cover *all* the material within each, as that material is original to Perfect 10. *Id.* ¶ 70.

Defendant Cybernet runs a website located at www.adultcheck.com ("the Adult Check site"). *Id.* ¶ 24. The premise of the Adult Check site centers on its functioning as a combination gateway and quality assurance site for a number of other websites. *Id.* at ¶¶ 24–28. For customers, by paying a fee to Adult Check they can access and view the content on any of the related sites within the Adult Check "family." *Id.* ¶ 25. These sites are linked to the Adult Check site, which provides a centralized "menu" for Adult Check customers. *Id.* ¶ 26. Some of these sites are exclusive to Adult Check members. *Id.* ¶ 25. Further, Adult Check contains assurances that it monitors the quality of the various sites. *Id.* ¶ 28.

The Adult Check site asserts that "websites in the … program must be unique and they must pass a rigorous review from our staff to ensure that our customers are receiving a premium entertainment experience." *Id.* The site advertises over 10,170 hand-selected sites. *Id.*

The benefit for the affiliated websites within the Adult Check family is two-fold.[2] First, Cybernet pays a portion of its revenues to these websites. *Id.* ¶ 25. Second, the assurance that Adult Check provides to customers presumably increases the likelihood of visits to the sites, thereby increasing their value. *Id.* ¶¶ 26, 28. The benefits of the system to the affiliated sites is highlighted by the way affiliated sites automatically direct non-Adult Check users to the Adult Check site when they attempt to enter one of the affiliated sites without using Adult Check. *Id.* ¶ 29.

The exact relationship between Cybernet, its Adult Check site and the affiliated sites is unclear. On the one hand, the Adult Check site, owned by Cybernet, advertises that it acts as a "partner" with the affiliated websites-going so far as to call the webmasters of such sites "Adult Check Webmasters." *Id.* ¶ 27. On the other, the rigorous review mentioned above and the affiliated status of the websites leaves open the possibility that the websites linked to Adult Check are owned or run by other entities.

Perfect 10 has a variety of problems with the sites within the Adult Check family. Those problems have led to the present action. Apparently some sites copy images from Perfect 10's copyrighted works. *Id.* ¶ 33. Some sites include the Perfect 10 trademark, suggesting affiliation with Perfect 10, connection with Perfect 10 for pictures not related to Perfect 10's copyrights; or Perfect 10's approval of possible copying on the site. *Id.* ¶¶ 92, 93. Additionally, a variety of sites advertise pictures of celebrities in sexually explicit poses, but when one goes to the site, the pictures involve the bodies of different people with the heads of celebrities superimposed. *Id.* ¶¶ 35, 36. Finally, some of the sites use pictures of models without their permission. *Id.* ¶¶ 33, 35, 36. Perfect 10 claims some of these models have assigned Perfect 10 their right of publicity, while other pictures violate the publicity rights of third persons with whom Perfect 10 has no direct relationship. *Id.* ¶¶ 33, 35.

Perfect 10 alleges that Cybernet is not only aware of these various problems, but that it actively encourages these activities.

---

**2.** When referring to the combination of the Adult Check site and the websites affiliated with it, the Court will refer to the "Adult Check family," in contrast to the "Adult Check site."

*Id.* ¶¶ 27–32. According to Perfect 10, by disregarding the laws of copyright, trademark, publicity and unfair competition, the Adult Check family is able to entice more users and to provide its services at lower costs. *Id.* ¶¶ 1–3.

## III. ANALYSIS

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint fails to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). A complaint fails to state a claim if it does not allege facts necessary to support a cognizable legal claim. *See Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988); *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533–34 (9th Cir.1984).

In reviewing a Rule 12(b)(6) motion, the court must presume the truth of the factual allegations in the complaint, and draw all reasonable inferences in favor of the non-moving party. *See Parks Sch. of Bus., Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995); *see also Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). Dismissal under Rule 12(b)(6) is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citations omitted). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the plaintiff's claim. *See Usher,* 828 F.2d at 561.

Under Federal Rule of Civil Procedure 8, a pleading shall contain "a short and plain statement of the claim showing that the plaintiff is entitled to relief." Moreover, "[t]he pleadings need not identify any particular legal theory under which recovery is sought." *Crull v. GEM Ins. Co.,* 58 F.3d 1386, 1391 (9th Cir.1995). It is enough that the complaint gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests so that the defendant can frame a responsive pleading. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (citing *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The Supreme Court has explained that the "liberal system of 'notice pleading' " does not require a claimant to set out in detail the facts upon which it bases its claim.

### B. Applying the standard

Here, Perfect 10 identified ten causes of action against Cybernet:

1) copyright infringement (17 U.S.C. § 501 *et seq.*)

2) trademark infringement (15 U.S.C. §§ 1114, 1125)

3) trademark disparagement (15 U.S.C. § 1125(a))

4) trademark dilution (15 U.S.C. § 1125(c); Cal. Bus. & Prof.Code § 14330; and common law)

5) wrongful use of a registered trademark (Cal. Bus. & Prof.Code § 14335)

6) violation of publicity rights (Cal. Civil Code § 3344; and common law)

7) unfair competition (Lanham Act § 43(a); Cal. Bus. & Prof.Code § 17200)

8) false advertising (Cal. Bus. & Prof. Code § 17500 *et seq.*)

9) civil RICO,[3] investment of proceeds (18 U.S.C. § 1962(a))

10) civil RICO, participation (18 U.S.C. § 1962(c))

---

**3.** Racketeering Influenced and Corrupt Organizations Act.

Defendant Cybernet challenges each and every one of these theories in its motion to dismiss. In the alternative it moves for a more definite statement with regard to each claim. The Court will analyze each claim in turn.[4]

### 1. Copyright Infringement

■ Cybernet argues that the complaint fails to allege a valid claim of copyright infringement. Def. Mem. at 4–5. Cybernet bases this argument on the failure of Perfect 10 to state, in its complaint, every copyright relied on, every individual image in the magazines that is being infringed, every image on specific web pages that does infringe, or the dates of any infringement. *Id.* This misconstrues the burden Perfect 10 faces in the pleadings stage. Copyright claims need not be pled with particularity. *See, e.g., Mid America Title Co. v. Kirk,* 991 F.2d 417, 421 (7th Cir. 1993). As courts have noted in recent, post-*Leatherman* cases, complaints simply alleging present ownership by plaintiff, registration in compliance with the applicable statute and infringement by defendant have been held sufficient under the rules. *Id.* at 421 n. 8 (quoting 5 *Wright & Miller, Federal Practice and Procedure* § 1237, at 283 (1990)); *Jetform Corp. v. Unisys Corp.,* 11 F.Supp.2d 788, 790 (rejecting heightened pleading based on *Leatherman*).

The purpose of modern rules of civil procedure is to avoid a regime of heightened pleading with the exceptions listed in Federal Rule of Civil Procedure 9(b). *See Leatherman,* 507 U.S. at 168, 113 S.Ct. 1160 ("we said in effect that [Rule 8] meant what it said"). Here Perfect 10 alleges the existence of hundreds, even thousands of infringing photographs within the various websites that Adult Check has placed within its "family." *See, e.g.,* 2AC ¶¶ 38, 40, 43, 48, 53, 59, 61. Requiring a statement of each and every example would defeat the regime established by Rule 8.

Similar cases in the Internet area strongly suggest that Cybernet's pleading arguments are not just legally incorrect, but also incompatible with the types of claims involved in this case. In *A & M Records, Inc. v. Napster, Inc.,* the Ninth Circuit upheld the district court's finding that plaintiffs had demonstrated a likelihood of success on their copyright infringement claims. *See* 239 F.3d 1004, 1022, 1024 (9th Cir.2001). In that case, the district court was confronted with allegations of massive infringement and relied on samples to establish the scope of the infringement. *See A & M Records, Inc. v. Napster, Inc.,* 114 F.Supp.2d 896, 902, 911 (N.D.Cal.2000) *aff'd in part, rev'd in part by* 239 F.3d 1004 (9th Cir.2001) *as amended by* (April 3, 2001). Moreover, because of the user-dependent nature of this copyright infringement, the number could vacillate hour-to-hour, day-to-day. *See Napster,* 239 F.3d at 1011–13 (describing file-sharing process). There is no indication, however, that the district court required the plaintiffs to specify each and every alleged violation of copyright law in their complaint. *Cf id.* at 1027 (requiring plaintiffs to provide Napster notice of infringed works as part of injunctive relief).

Similarly, in *Playboy Enterprises v. Russ Hardenburgh, Inc.,* the district court was faced with a summary judgment motion on a copyright claim involving ninety-

---

4. At the outset, the Court rejects Cybernet's argument to dismiss based on Perfect 10's failure to allege a detailed basis for jurisdiction in the first paragraph of the Second Amended Complaint. *See* Local Rule 3.7.1. Perfect 10's original complaint complied with the Local Rule and the current complaint mentions federal question jurisdiction in the first paragraph, while detailing the basis in ¶ 5. 2AC ¶¶ 1, 5.

nine images. *See* 982 F.Supp. 503, 506–07 (N.D.Ohio 1997). This number was then reduced to twenty images. *See id.* Following scrutiny of tapes supplied by the FBI, however, the plaintiff then brought a summary judgment motion for 392 additional copies. *See id.* at 507. Although never expressly discussed, this wide variation in number, particularly considering the much smaller initial investigation, supports this Court's conclusion that Rule 8 does not *require* the highly detailed pleading demanded by Cybernet.

The question thus boils down to whether or not Cybernet has fair notice of the allegations against it. *See Leatherman,* 507 U.S. at 168, 113 S.Ct. 1160. Perfect 10's complaint identifies copyrights involving their magazines and identifies ownership of the pictures within the magazines.[5] 2AC ¶¶ 38–70. This is sufficient to notify Cybernet as to the type of infringing conduct and the source of the claims. Moreover, the complaint specifically identifies websites where infringing conduct can be found, and alleges that some of this infringing conduct still carries Perfect 10's identification. *Id.* Further details can be elicited during the discovery stage. *See Mid America Title,* 991 F.2d at 422–23 (recognizing similar argument more suited for summary judgment than motion to dismiss).

Moreover, this information is sufficient to guide Cybernet in its responsive pleadings. Cybernet is either aware of potential infringement or it is not. *See* 2AC ¶ 31. It is a true partner with each and every Adult Check Webmaster, some Adult Check Webmasters, or none. *See*

2AC ¶ 27. It either performs a "rigorous review" of the material on the affiliated websites or it does not. *See* 2AC ¶ 28. The list goes on. The ever-shifting nature of the Internet and the potential scale of the allegations involved undercut Cybernet's arguments; Rule 8 conclusively refutes them. Perfect 10 has thus sufficiently alleged violations of the copyright laws by Cybernet.[6]

### 2. Direct Copyright Infringement

■ Cybernet, however, argues that even if these pleadings are sufficient, Perfect 10 has failed to adequately plead a direct copyright infringement claim. Def. Mem. at 6. Cybernet relies on two cases: *Religious Technology Center v. Netcom On–Line Communication Services, Inc.,* 907 F.Supp. 1361 (N.D.Cal.1995) and *Bernstein v. J.C. Penney, Inc.,* 50 U.S.P.Q.2d 1063 (C.D.Cal.1998). Based on these, Cybernet argues that a website provider like itself can *never* be directly liable for copyright infringement carried out by others using the service. Def. Mem. at 6. Neither case supports such a broad proposition, nor do these cases adequately support Cybernet's position on the facts of this case.

*J.C. Penney* is a district court case that held an on-line website could not be liable for copyright infringement based on links to other websites. 50 U.S.P.Q.2d at 1064, 1998 WL 906644. The case lacked a rationale, however, and thus fails to persuade the present Court. *See id. Religious Technology,* on the other hand, refused to allow for the possibility of finding direct infringement for an electronic bulletin board service (BBS) provider, where post-

---

5. This identification by Perfect 10 that it owns individual pictures defeats Cybernet's "suggestion for lack of jurisdiction" pursuant to Fed. R. Civ. P 12(h)(3), and Cybernet's *ex parte* application on that ground is hereby DENIED.

6. The Court also finds that this vagueness argument fails to the extent Cybernet desires to require Perfect 10 to identify the specific registration numbers of third parties. It is enough that Perfect 10 adequately identify the location of these pictures for Cybernet. *See infra* (discussing third-party copyrights).

ers on the board were infringing copyrights. *See* 907 F.Supp. at 1372. The district court hinged its conclusion on the lack of a volitional act by the BBS, *see id.* at 1370, and found that any element of knowledge was relevant only to contributory infringement, not direct infringement. *See id.* at 1372. At the same time, in dicta, the court implied that a BBS could or should never be found liable for direct infringement. *See id.*

Here, however, the allegations counsel against following *Religious Technology*'s example. Perfect 10 alleges that Cybernet is a partner of the various websites. 2AC ¶ 27. Cybernet *may* have a direct role in the infringement. Until the exact relationship between Cybernet and the potentially infringing websites is established, the Court cannot conclude that no set of facts exists that could make Cybernet liable for direct infringement. Thus, the motion to dismiss the allegation of direct copyright infringement must be denied.

### 3. Trademark Infringement Claims– Are They Too Vague?

■ Cybernet also attacks Perfect 10's allegations in the second through fifth claims, all relating to trademark rights, as "hopelessly vague." Def. Mem. at 7. For reasons substantially similar to those that defeat the vagueness argument against the copyright claim, the argument must be rejected against the trademark claims.[7] Perfect 10 identifies its trademarks and even points to specific websites with the infringing trademark usage. 2AC ¶¶ 86, 94. Although no specific image is identified, given Perfect 10's allegations concerning the scope of the alleged violations and

Cybernet's alleged role, Cybernet is put on notice of the claims' nature and has enough information to draft its pleadings. *See Leatherman,* 507 U.S. at 168, 113 S.Ct. 1160.

### 4. Direct Trademark Infringement

■ Paralleling the result of Cybernet's objections to the copyright claims, Cybernet's objection to the theory of direct trademark infringement is misplaced, Def. Mem. at 7, at least until the exact relationship between Cybernet and the affiliated websites is established. *See supra.* The partnership allegations based on Cybernet's own website, if true, may provide further factual support for the direct infringement claim. Nor is Cybernet's objection that it cannot be a direct and indirect infringer at the same time well-taken. Def. Mem. at 8. Pleading can be in the alternative. *See* Fed.R.Civ.P. 8.

### 5. Do the Trademark Claims Duplicate the Copyright Claim?

■ Cybernet also argues that Perfect 10's trademark claims are duplicative of its copyright claims and therefore should be dismissed. Def. Mem. at 8. In analyzing this, the key language in the complaint is found in the allegation that web pages "contain a Perfect 10 copyright notice *and/or* a caption which states 'Perfect 10.'" 2AC ¶ 92 (emphasis added). Although Cybernet's argument may have some application to those situation where the infringing picture *only* contains the copyright notice or leaves it out, *cf. Richard Feiner & Co., Inc. v. H.R. Indus., Inc.,* 10 F.Supp.2d 310, 316 (S.D.N.Y.1998), it

7. In a microcosm of its attack on the pleadings as a whole, Cybernet attacks Perfect 10's attachment of trademark registrations, domestic and foreign. Def. Mem. at 7 n. 9. Cybernet protests because it views the foreign trademark registrations as unnecessary. *Id.* It also objects to language such as, "Attached

... are trademark registrations that have been infringed by the defendants," because it is the trademarks that are infringed, not the registrations. *Id.* It is this hair-splitting approach to pleadings that Rule 8 is meant to relegate to the dust-bins of legal history.

has no application to those web pages that contain *both* the picture and any registered trademarks or those web pages that only contain the registered trademark.

Further, whatever the persuasive value of Cybernet's case, this Court is bound by the holding in *Nintendo of America, Inc. v. Dragon Pacific Int'l.*, 40 F.3d 1007, 1010–11 (9th Cir.1994). In *Nintendo,* the Ninth Circuit upheld the awarding of both copyright and trademark damages because the copies of the video games involved were also identified as Nintendo games. *See id.* at 1009. As the court observed, "[p]ut together selling the cartridges may have been one act, but it was two wrongs." Based on Perfect 10's pleadings this language decides the matter in Perfect 10's favor. *See also Lyons Partnership, L.P. v. AAA Entertainment Inc.*, 1999 WL 1095608 *1, *10 (S.D.N.Y.1999) (upholding copyright and trademark damages for use of Barney costume, no trademark identification, citing and following *Nintendo* ).

In reply, Cybernet attempts to distinguish *Nintendo* by pointing out that this is a motion to dismiss whereas *Nintendo* involved an award of damages for both claims. Def. Reply at 8. Given that the monetary awards in *Nintendo* necessarily required the validity of *both* the trademark and copyright claims, the Court does not see how the distinction helps Cybernet. Because Perfect 10 has adequately stated a claim under *Nintendo,* the motion to dismiss on the grounds of overlap with the copyright claims must be denied.[8]

### 6. Dilution

Cybernet claims that Perfect 10's dilution claim is so lacking in detail that Cybernet cannot respond. Def. Mem. at 9. For the same reasons this argument fails in the copyright and general trademark contexts, it fails again here. *See supra.* Similarly, Cybernet again tries to distance itself from its affiliated websites in contesting the "direct" dilution claim. Def. Mem. at 9. Once again, Perfect 10's allegations of partnership are enough to defeat the motion to dismiss for this claim.[9] *See supra*

### 7. Wrongful Use of Registered Mark

Cybernet repeats its arguments against the trademark claims as a whole as its argument against the wrongful use claim. Def. Mem. at 9–10. Just as these arguments were insufficient in that context, they fail to justify dismissing Perfect 10's wrongful use of a registered mark claim. *See supra.*

### 8. Right of Publicity–Failure to "use"

As for Perfect 10's right of publicity claim, Cybernet raises the characterization of itself as simply an indexer and linker of websites. Def. Mem. at 10. As such, Cybernet maintains that it did not *use* anyone's identity. *Id.* This again ignores Perfect 10's allegation that Cybernet holds itself out as a partner with its Adult Check Webmasters. Just as with the other "direct" claims, this allegation suffices

---

**8.** Cybernet also objects to Perfect 10's allegations referencing statute sections, but not specific sub-sections. Def. Mem. at 8 n. 10. Neither are required by Rule 8.

**9.** Cybernet's short statement regarding the lack of an indirect dilution action is insufficient argument for such a potentially contentious point. *Compare Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980 (9th Cir.1999) ("Although courts have discussed contributory dilution, no appellate court or statute has yet established the cause of action") *with* 4 *McCarthy on Trademarks and Unfair Competition* § 25:21.2 at 25–46 (no authority directly on point, no logical reason not to apply contributory theory to anti-dilution law, citing case authority). The Court therefore does not address this possibility.

to state a claim against Cybernet. *See supra.*

### 9. Right of Publicity–Insufficient Notice

■ Cybernet also argues, however, that Perfect 10 has not provided Cybernet with fair notice of whose rights of publicity have been violated. Def. Mem. at 10–11. Perfect 10 has alleged that third parties have assigned these rights to Perfect 10, and there is an implication that Perfect 10 has these rights for every picture in every Perfect 10 magazine. 2AC ¶ 119. Unlike the copyright claims, however, where the pictures alone provide sufficient indication of the legal violation, the right of publicity does attach to identifiable persons. *See Downing v. Abercrombie & Fitch,* 265 F.3d 994 (9th Cir.2001). Perfect 10 needs to identify these people in order to give Cybernet fair notice of these alleged violations. This is particularly appropriate where, as here, a plaintiff also alleges violations of other, non-assigned, third-party rights. The Court thus finds that Cybernet's alternate request for a more definite statement is appropriately granted on the right of publicity claim.[10]

### 10. Unfair Competition

■ Cybernet relies on a misstated holding of the California Supreme Court in its attempt to get the unfair competition and false advertising claims dismissed. Def. Mem. at 12. Cybernet argues that because Perfect 10 failed to allege "an incipient violation of antitrust law" the claim must be dismissed. *Id.*

California's unfair competition law is broadly phrased to prohibit "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. In *Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* the California Supreme Court clarified the meaning of the "unfair" arm of this prohibition and adopted the language Cybernet sets forth. *See* 20 Cal.4th 163, 186–87, 83 Cal.Rptr.2d 548, 973 P.2d 527 (Cal.1999). This decision, however, did not purport to alter the analysis of the other two varieties of unfair competition—"unlawful" and "fraudulent" activity. *See id.* at 180, 187 n. 12, 83 Cal.Rptr.2d 548, 973 P.2d 527.

Even if Perfect 10 could not win under an "unfair" theory,[11] the existence of other potentially successful avenues under this statute—based on Cybernet's alleged unlawful conduct, if nothing else-are enough to defeat the motion to dismiss. *See, e.g., Denbicare U.S.A., Inc. v. Toys R Us, Inc.,* 84 F.3d 1143, 1152 (9th Cir.1996) (trademark and California unfair competition claims rising and falling together).[12]

### 11. Unfair Competition–Copyright Claims Preempted?

Cybernet also argues that the copyright-related claims cannot be used to establish liability under this claim, because the Copyright Act preempts state law in this context. Def. Mot. at 13–14. Perfect 10 does not dispute this assertion as it relates to Perfect 10's copyrights, but replies that

---

**10.** The Court does not assume and Perfect 10's complaint gives no indication that the identity of the people in the pictures at issue is either identified in the pictures or immediately obvious, further exacerbating the Court's concerns over fair notice on this count.

**11.** *But see* Pl. Opp. at 13 (arguing implicit in allegations is an "incipient violation of antitrust law").

**12.** Cybernet also argues that the unfair competition claim is doomed by the arguments applied to the trademark claim. Def. Mem. at 13. They fail in this context as well, and for the same reasons. *See supra.*

its unfair competition claim is actually based on:

1) deception of consumers regarding the sponsorship, identity and characteristics of content on the websites;

2) violations of the right of publicity;

3) misappropriation of third-party content, including counterfeit celebrity pictures; and

4) willful infringement of third-party copyrights. Pl. Opp. at 14.

 The Court dismisses so much of the unfair competition claims as they relate to copyrights, whether Perfect 10's or third parties', based on preemption. Although California law may allow plaintiffs to assert third party claims, federal copyright law only allows the owner of a copyright to bring suit. *See* 5 U.S.C. § 501(b) (stating legal or beneficial owner entitled to sue); *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir.1991) (Copyright Act not permitting copyright holders to choose third parties). Allowing Perfect 10 to defeat this express requirement through application of state law is incompatible with the federal scheme of copyright protection. *See Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212–13 (9th Cir.1998) (state-law unfair competition claim preempted by Copyright Act where rights were equivalent and fell within copyright subject matter).

 This leaves Perfect 10 with the other bases for its unlawful competition claim. To the extent this claim relies on the violations of the rights of publicity, both of Perfect 10 models through assignment and of other third parties, it suffers from the same defects as the initial right of publicity claim.[13] *See supra.* Perfect

10 must therefore clarify whose rights of publicity are violated, as the Court GRANTS the motion for a more definite statement as to this portion of the claim.

As for deception, Perfect 10's allegations concerning celebrity sites and sexually explicit pictures are sufficiently particular to meet California's pleading requirements. *See Khoury v. Maly's of California, Inc.*, 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (1993) (requiring facts pled with "reasonable particularity"). Nor are the examples mere "puffery." *See Haskell v. Time, Inc.*, 857 F.Supp. 1392, 1399 (E.D.Cal. 1994). It is not a "vague, highly subjective claim" when one attaches "You Gotta Love Jennifer Love Hewitt Nudes" to a web link. *See id.* Rather, one could reasonably expect to find Jennifer Love Hewitt nude images on a site with that label.[14] 2AC ¶ 35. The declaration of Britney Spears and her manager give ample evidence of the nature and extent to which Perfect 10 is alleging these deceptive celebrity-directed sites are found in the Adult Check family and on the Adult Check site's links. 2AC, Ex. A. Thus, Perfect 10 has adequately stated the facts supporting this portion of the unfair competition claim.

### 12. Unfair competition-standing

 Cybernet does not rest content with challenging the substance of Perfect 10's unfair competition claim. Cybernet also argues that Perfect 10 lacks standing to bring its claim for injunctive relief in ¶ 137 because it is brought on "behalf of the general public." Def. Mem. at 15. Construed in the light most favorable to Perfect 10, the Court reads this as a re-

13. These claims are not preempted. *See Downing*, 265 F.3d 994 (statutory and common law right of publicity claims not preempted by Copyright Act).

14. Unlike some of Cybernet's other arguments, Cybernet only targets these specific examples as "puffery." The Court finds, however, that the allegations regarding presumably current links are sufficiently particular for pleading purposes.

quest on behalf of itself *and* the general public. *See* Cal. Bus. & Prof.Code § 17204 (authorizing action "by any person acting for the interests *of itself . . . or the general public* ").

Read in this light, Perfect 10 has met the constitutional requirements for standing:

1) it has suffered economic injury;

2) that injury is caused, at least in part, by defendants' violations of third-party rights; and

3) enjoining defendants' violations would provide Perfect 10 redress for its injuries.

*See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

Therefore, Cybernet's standing objections do not support a motion to dismiss on the unfair competition claims.[15]

### 13. RICO–general requirements

Cybernet points to several perceived shortcomings in Perfect 10's two RICO claims:

1) Cybernet argues that Perfect 10 has failed to allege "willfulness" as to the copyright infringement. Def. Mem. at 18–19.

2) Cybernet disputes the conclusion that Perfect 10 has pleaded sufficient facts to establish a "pattern of racketeering activity." *Id.* at 20–21.

3) Cybernet maintains that Perfect 10 lacks standing to sue for the copyright infringement of third-party copyrights. *Id.* at 21.

4) Cybernet argues that Perfect 10 has failed to identify any injury resulting

from the use or investment of racketeering income. *Id.* at 21–22.

5) Cybernet also argues that Perfect 10 has failed to plead an enterprise distinct from Cybernet. *Id.* at 22–23.

6) Cybernet further maintains that Perfect 10 has failed to show a nexus between the racketeering and the Adult Check enterprise. *Id.* at 23–24.

7) Cybernet finally states that Perfect 10 has not alleged a structure of the enterprise "separate and apart from the pattern of racketeering activity" in which the enterprise engages. *Id.* at 24.

Rather than rehash each of these individually and in greater depth than Cybernet has, the Court will move quickly through the arguments.

Cybernet has maintained that it is separate from the activities of the websites that make up the Adult Check family, thus effectively conceding a distinct enterprise. *See* Def. Mem. at 1,6; *see also Brady v. Dairy Fresh Products Co.,* 974 F.2d 1149, 1154 (9th Cir.1992) (discussing relevance of enterprise/person distinction). Moreover, the partnership with the other websites, including the supervisory role Perfect 10 alleges for Cybernet would suffice as an organizational structure. *See* 2AC at ¶¶ 27, 28; *see also Chang v. Chen,* 80 F.3d 1293, 1300 (9th Cir.1996) ("the involvement of a corporation . . . can satisfy the enterprise element's requirement of a separate structure"). This is reinforced by the funneling aspect Cybernet plays, collecting money for the infringing uses and then routing it to the alleged infringing sites through the Adult Check family structure,

---

15. The Court restricts its analysis to the Article III standing requirements because *neither* party addressed the proper legal standard for the prudential limitations on third-party standing in federal court. *See Powers v. Ohio,* 499 U.S. 400, 410–11, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *Viceroy Gold Corp. v. Aubry,* 75 F.3d 482, 488–89 (9th Cir.1996) (third-party prudential standing test).

establishing a nexus. *See* 2AC at ¶ 25; *see also Sun Savings & Loan Ass'n v. Dierdorff,* 825 F.2d 187, 195 (9th Cir.1987) (discussing nexus).

Further, Perfect 10 alleges Cybernet is aware that the copying is copyright infringement, that Cybernet *claims* to know what is going on with each and every site in the Adult Check family, and that Cybernet has actual notice that Perfect 10 did not give these websites permission to use Perfect 10's images. *Id.* at ¶¶ 31, 27–28, 73. Cybernet has not adequately addressed these allegations and their support for a finding of criminal willfulness. *See* Def. Reply at 18–20.

As for the pattern of racketeering activity, the broad reach of the alleged infringement, on a variety of sites owned by different individual site owners establishes a sufficient pattern for RICO. *See* Def. Mem. at 1 (denying ownership of other sites); *see also Sun Savings & Loan,* 825 F.2d at 191–92 (defining pattern, looking for continuity plus relationship). If one considers the alleged third-party copyright violations, the pattern becomes even broader. *See, e.g.,* 2AC at ¶ 134.

■ This brings the Court to the substantive heart of Cybernet's RICO objections. Cybernet claims that allowing a RICO action for the violation of third-party copyrights violates the exclusive remedies of the copyright laws. Def. Mem. at 19. This Court sees no conflict. Unlike the case with state laws, analyzed earlier, here federal legislation apparently authorizes third-party claims and lists copyright infringement as a predicate act. *See Sun Savings & Loan,* 825 F.2d at 191–92 (pattern has "same *or similar* ... victims," finding pattern in four acts of fraud to third-parties) (emphasis added). Allow-

ing these third-party claims to attach to Perfect 10's first-party claims furthers the broad remedial purpose of RICO and addresses all the injuries Perfect 10 perceives. *See Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 497–98, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). This Court will not generate a conflict between two federal statutes where it is entirely plausible that none exists.[16] *See Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974) ("when two statutes are capable of co-existence, it is the duty of the courts ... to regard each as effective.")

Finally, Cybernet argues that the Ninth Circuit has specifically rejected the "reinvestment injury" theory alleged by Perfect 10 under RICO's § 1962(a). Def. Reply at 22. This argument is true, up to a point. Although the Ninth Circuit has rejected a bare "reinvestment theory," it also recognized that a plaintiff may show that the racketeering income was reinvested *in a way that hurt the plaintiff. See, e.g., Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co.,* 981 F.2d 429, 437–38 (9th Cir. 1992); *Larsen v. Lauriel Investments,* at 1035–36, 1045–46 (D.Ariz.2001) (finding standing for reinvestment where the reinvestment caused further injury).

■ Assuming for the moment that the relevant "enterprise" is the Adult Check family, taken as a whole, there appears to be two alleged uses of racketeering income: 1) the collection and retention of fees by Cybernet; and 2) Cybernet's sending of fees to the owners of other sites. Perfect 10 has *not* alleged, for instance, that Cybernet uses the fees so collected to finance expansion or competition against Perfect 10, expand its customer base, or to

---

**16.** The Court reserves the right to revisit this issue if presented with an argument that squarely addresses the interrelationship between the civil copyright infringement en- forcement provisions and RICO's civil enforcement provisions based on criminal copyright acts.

bring in, acquire and/or pay other, "legitimate" websites within the Adult Check family by offering financial incentives. *See Schwartz v. Upper Deck Co.*, 956 F.Supp. 1552, 1559 (S.D.Cal.1997) (suggesting "competitor who has suffered a competitive injury" because of use of ill-gotten revenues has § 1962(a) standing). Without some indication of precisely *how* Perfect 10's damage is derived from something more than the predicate acts of infringement, Perfect 10 has failed to adequately allege a violation of 18 U.S.C. § 1962(a). *See Nugget Hydroelectric*, 981 F.2d at 437. Rather than dismiss the complaint at this stage, however, the Court will GRANT Cybernet's motion for a more definite statement as to how, precisely, Perfect 10 claims it has been injured by the use or investment of racketeering income by Cybernet.

## IV. CONCLUSION

For the foregoing reasons, Cybernet's motion to dismiss is DENIED as to the claims for:

1) copyright infringement (17 U.S.C. § 501 *et seq.*);

2) trademark infringement (15 U.S.C. §§ 1114, 1125);

3) trademark disparagement (15 U.S.C. § 1125(a));

4) trademark dilution (15 U.S.C. § 1125(c); Cal. Bus. & Prof.Code § 14330; and common law);

5) wrongful use of a registered trademark (Cal. Bus. & Prof.Code § 14335);

6) violation of publicity rights (Cal. Civil Code § 3344; and common law);

7) unfair competition (Lanham Act § 43(a); Cal. Bus. & Prof.Code § 17200), except to the extent this is based on the violations of third-party copyright rights;

8) false advertising (Cal. Bus. & Prof. Code § 17500 *et seq.*);

9) civil RICO, investment of proceeds (18 U.S.C. § 1962(a)); and

10) civil RICO, participation (18 U.S.C. § 1962(c))

Cybernet's motion to dismiss is GRANTED as to the unfair competition claim, but only to the extent it alleges unfair competition based upon Cybernet's violations of third-party copyrights.

Cybernet's motion for a more definite statement is GRANTED as to the sixth claim for violation of publicity rights; the seventh claim for unfair competition; and the claim for the investment of racketeering proceeds in violation of 18 U.S.C. § 1962(a).

Perfect 10 is therefore ORDERED to file a more definite statement with this Court within twenty (20) days of this Order's filing date.

Finally, Cybernet's *Ex Parte* "suggestion of lack of jurisdiction" pursuant to Federal Rule of Civil Procedure 12(h)(3) is DENIED.

**IT IS SO ORDERED.**