### In re TABLEWARE ANTITRUST LITIGATION

**This Document Relates to All Actions**

**No. C–04–3514 VRW.**

United States District Court,
N.D. California.

March 10, 2005.

---

Richard Alexander Saveri, Cadio Zirpoli, Geoffrey C. Rushing, Guido Saveri, Lisa Saveri, Saveri & Saveri Inc., San Francsico, CA, Craig C. Corbitt, Zelle, Hofmann, Voelbel, Mason & Gette LLP, San Francisco, CA, Joseph M. Alioto, Alioto Law Firm, San Francisco, CA, for W. Scott Young.

Tammy Albarran, Terri Garland, Morrison & Foerster, San Francisco, CA, for Lenox, Inc.

Jeffrey C. Hallam, San Francisco, CA, Patrick Pearse O'Donnell, Harris, Wiltshire & Grannis, Washington, DC, for Waterford Wedgewood, U.S.A.

## ORDER

WALKER, Chief Judge.

Plaintiffs in these consolidated cases allege that defendants May Department Stores Co ("May") and Federated Department Stores, Inc ("Federated"), which operate department stores across the United States, and defendants Lenox, Inc ("Lenox") and Waterford Wedgwood, USA ("Waterford"), both of which produce fine tableware sold in the United States, conspired with one another to fix the price of tableware and boycott Bed, Bath and Beyond, a competitor of May and Federated. Plaintiffs bring suit under section 1 of the Sherman Act principally seeking monetary relief.

Defendants all join in moving pursuant to FRCP 12(b)(6) to dismiss the consolidated amended complaint (Doc. # 18) (CAC) for failure to state a claim upon which relief may be granted. Def Mot (Doc. # 23); Joinders (Doc. ## 22, 25). Defendants' argument is simple: They contend that the CAC contains insufficient factual support for the claimed violations; in particular, defendants contend that the CAC's factual allegations are no more than conclusory statements that defendants violated the Sherman Act.

The standard is familiar: FRCP 12(b)(6) motions to dismiss essentially "test whether a cognizable claim has been pleaded in the complaint." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988). FRCP 8(a), which states that a plaintiff's pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," provides the standard for judging whether such a cognizable claim exists. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir.2001). This standard is a liberal one that does not require a plaintiff to set forth all the factual details of the claim; rather, all that the standard requires is that a plaintiff give the defendant fair notice of the claim and the grounds for making that claim. *Leatherman v. Tarrant County Narcotics Intell & Coord Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). To this end, a plaintiff's complaint should

set forth "either direct or inferential allegations with respect to all the material elements of the claim". *Wittstock v. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir.2003).

Under Rule 12(b)(6), a complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (citing *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). See also *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99. All material allegations in the complaint must be taken as true and construed in the light most favorable to plaintiff. See *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 980 n. 10 (9th Cir.1999). The court may also consider documents attached to the complaint in connection with a FRCP 12(b)(6) motion to dismiss. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). The court may not, however, consider other documents outside the pleadings. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir.2001).

■ The court must reject out-of-hand the significance plaintiffs attach to the fact that their complaint is directed toward the subject of the Attorney General of New York's investigation of (and out-of-court settlement with) some of defendants. Plaintiffs argue in essence that an invocation of this prior investigation provides defendants with all the notice required by FRCP 8. This cannot be so, for if it were, mere knowledge of a governmental investigation would suffice—without *any* further inquiry on a would-be plaintiff's part—to expose the targets of such investigations to free-ranging civil discovery. A plaintiff may surely rely on governmental investigations, but must also, under FRCP 11, undertake his own reasonable inquiry and

frame his complaint with allegations of his own design. See *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). Simply saying "me too" after a governmental investigation does not state a claim.

■ The question is not whether the New York Attorney General has put defendants on notice of possible civil liability, but rather whether plaintiff's complaint has done so. It has. Contrary to defendants' assertions that the CAC is utterly conclusory, plaintiffs have enumerated specific actions allegedly taken by defendants and their alleged effects:

(a) * * * fix[ing], rais[ing], establish[ing] or maintain[ing] the price at which defendants advertise, promote, offer for sale or sell tableware;

(b) * * * fix[ing], rais[ing], maintain[ing], control[ling] or establish[ing] the price of tableware sold throughout the United States;

(c) participating in conversations to discuss the prices of and/or allocate the market for tableware products;

(d) agreeing during those conversations to set prices at certain levels, to maintain prices of tableware products, and to allocate markets;

(e) * * * restrain[ing] the sale of tableware products intended to be offered by Bed[,] Bath & Beyond;

(f) * * * boycott[ing] Bed, Bath & Beyond so as to eliminate and suppress competition in the sale of tableware products to consumers throughout the United States.

Consol Compl (Doc # 18) ¶ 25.

Beyond the simple fact that the CAC's allegations do (as a legal matter) meet the elements of a conspiracy in violation of section 1 of the Sherman Act—something defendants do not dispute—two further lines of reasoning convince the court that the CAC's allegations are sufficient and

appropriately nonclusory to survive a Rule 12(b)(6) motion. First, to require plaintiffs to plead more than they have would impermissibly impose a heightened pleading standard. Second, plaintiffs appear to proceed on the theory that the restraints alleged here are per se harmful to competition. As such, the many cases that take plaintiffs to task for failing adequately to plead harm to competition in rule of reason cases—several of which defendants cite—are simply inapposite. The court will elaborate briefly on the two points.

In considering whether a complaint provides insufficient factual support for a legally viable theory of relief, a useful thought experiment is to ask "what could plaintiff plead in an amended complaint to repair the defect?" The answer is often illuminating. Defendants respond that "[p]laintiffs [should] allege when [the conspiracy] conversations took place, how many occurred, who participated, where the conversations took place, [and] what topics were discussed" as well as specify "meeting dates," "meeting places" and name "individuals employed by * * * Defendants who allegedly participated." Mot Dismiss (Doc # 23) at 2:22–23, 3:26–4:1. This accurately characterizes what is missing from the CAC, but such allegations are commonly required only under FRCP 9(b)'s heightened pleading standard—and, by implication, are not required under standard Rule 8(a) notice pleading. The Supreme Court has recently reaffirmed its disapproval of judicially created heightened pleading standards in general, see *Swierkiewicz v. Sorema NA*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), and the Ninth Circuit has specifically rejected heightened pleading standards in the antitrust context, see *Hunt–Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627 F.2d 919, 924 (9th Cir.1980) (citing *Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Board of Culinary Workers*, 542 F.2d 1076, 1082 (9th Cir.1976)).

Turning to plaintiffs' specific theories of relief, they appear to state claims (presumably in the alternative) for (1) vertical minimum resale price maintenance, (2) horizontal price fixing and (3) an exclusionary group boycott. The court understands all three to be subject to per se condemnation under section 1 of the Sherman Act. See *Dr. Miles Medical Co. v. John D. Park & Sons Co.*, 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502 (1911); (vertical minimum resale price maintenance); *United States v. Socony–Vacuum Oil Co.*, 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940) (horizontal price fixing); *Fashion Originators' Guild of America v. FTC*, 312 U.S. 457, 312 U.S. 668, 61 S.Ct. 703, 85 L.Ed. 949 (1941) (exclusionary group boycotts). As such, plaintiffs need not plead a relevant market (as they would need to do for a section 2 claim), nor do they need to plead the harm to competition, something which is presumed in a per se case, see *Fortner Enterprises, Inc. v. United States Steel Corp.*, 394 U.S. 495, 498, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969) (" '[T]here are certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use.' " (quoting *Northern Pacific R Co v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958))).

Defendants cite a number of cases analyzed under the rule of reason; such claims simply require more detailed pleading than do per se claims. Those cases are inapposite for essentially the reasons plaintiffs identify. See Pls Opp (Doc. # 42) at 9–10. *Kingray, Inc. v. NBA, Inc.*, 188 F Supp 2d 1177 (S.D.Cal.2002)—on which defendants rely, and rightly so, for it tends to support their position—is a per

se case, but is distinguishable because the economic relationship of the *Kingray* defendants was considerably more complex than the relationship alleged here, an almost prototypical two-line conspiracy. Sometimes less is more, and that is true of plaintiffs' pleading here.

Defendants do not raise in their motion any standing or antitrust injury issue with respect to plaintiffs' claims dealing with the alleged boycott of Bed, Bath & Beyond. Compare *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), with *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982). Presumably this is an issue reserved for another day.

Accordingly, the court DENIES defendants' motion to dismiss (Doc # 23). The hearing on this motion set for March 17, 2005, is VACATED. See Civ L R 7–1(b). The stay of discovery entered at the initial case management conference is VACATED. The parties shall confer to formulate a plan for discovery, which the court will take up at a further case management conference on March 29, 2005, at 9:00 am.

IT IS SO ORDERED.