**In re REMEC INCORPORATED
SECURITIES LITIGATION,**

**This Document Relates to: All Actions.**

**No. 04 CV 1948 JM AJB.**

United States District Court,
S.D. California.

Aug. 17, 2005.

Jeff S. Westerman, Milberg Weiss Bershad and Schulman, Los Angeles, CA, David William Mitchell, Lerach Coughlin Stoia Geller Rudman and Robbins LLP, Blake M. Harper, Hulett Harper Stewart, San Diego, CA, for Plaintiffs.

Robert W. Brownlie, Paul Reynolds, DLA Piper Rudnick Gray Cary US LLP, San Diego, CA, for Defendants.

## ORDER GRANTING MOTION TO DISMISS; GRANTING LEAVE TO AMEND

MILLER, District Judge.

Defendants Remec, Inc., Ronald E. Ragland, and Winston E. Hickman move to dismiss Plaintiff's federal securities complaint. Plaintiff opposes the motion. For the reasons set forth below, the motion to dismiss is granted with 20 days leave to amend from the date of entry of this order.

### BACKGROUND

Lead Plaintiff, the Cuvelier Group, alleges that Defendants Remec, Inc. ("Remec"), its CEO Ronald E. Ragland ("Ragland"), and its CFO Winston E. Hickman ("Hickman") violated the federal securities laws by issuing a series of knowingly false statements concerning Remec's financial results during the Class Period of September 8, 2003 through September 8, 2004.

Remec is a designer and manufacturer of high frequency subsystems used to transmit voice, video and other data over wireless communications networks and in space and national defense applications.

(Consolidated Amended Complaint ("CAC") ¶ 2). The Class Period begins on September 8, 2003 when Remec announced its second quarter 2004 results, for the period ending August 1, 2004. Remec announced increased six month revenue $167.5 million compared to $112.6 million in the same period of 2003 and losses of $16 million compared to $10.7 million for the comparable period. The CAC then sets forth approximately 18 additional statements to the effect that Remec was experiencing increased sales and positive financial results. (CAC ¶¶ 32–50). The CAC then sets forth five additional statements issued on September 8th and 9th that allegedly "reveal the truth." On September 8, 2004 Remec announced that it was taking a $62.4 million charge for good will impairment. Remec announced that it "conducted an impairment analysis of the goodwill associated with our commercial wireless business and determined that it should be written off in its entirety." (CAC ¶ 50). Remec explained that the primary factors contributing to the impairment assessment writeoff "were continued projected losses resulting from industry overcapacity resulting in lower profit margins, and manufacturing cost reductions lagging market price decreases." (CAC ¶ 53). On September 9, 2004 the price of Remec's stock fell to $4.30 per share, after having reached a Class Period high of $12.86 per share. (CAC ¶ 55).

In order to explain the nature of the securities fraud, Plaintiff alleges that "[e]ach of the positive statements" failed to disclose the following adverse information: the amount of the goodwill related to "certain acquisitions was overstated by approximately $62 million;" customers "were pulling business back from Remec due to poor performance, quality, and concerns about the stability of the company;" demand for its products was weakening; the Company's assets were overstated because of excess inventory and non-functioning prod-

ucts; the Company was dependent upon the sale of previously written off inventory with a zero cost basis to stave off the appearance of imminent disaster; the Company's gross margins were "decaying;" expenses were higher than anticipated; and the company had material internal control deficiencies. (CAC ¶ 58).

Plaintiff also interviewed former Remec employees who represented that "defendants hoped to become something of a one-stop-shop" and hoped to become "a $1 billion company." (CAC ¶ 60). Plaintiff alleges that Defendants failed to exercise good business judgment and due diligence and that they engaged in a "poorly conceived strategy." (CAC ¶ 62). Plaintiff also alleges that Remec's Global Executive VP of Marketing "bullied sales people into providing forecasts of sales that he could 'give to the street' (i.e. forecasts showing growth) although they knew those forecasts could not be met. Then when they did not meet those numbers, which was inevitable, he would require them to pull in orders from future quarters to make up the shortfall." (CAC ¶ 64). A former employee also informed Plaintiff that Remec would ship non-functioning products to customers and would improperly recognize revenue from such sales in an amount in the "high hundreds of thousands of dollars." (CAC ¶ 65). Plaintiff also alleges that Remec improperly recognized revenue on products before the products functioned properly. (CAC ¶ 66).

Plaintiff also alleges various violations of GAAP (Generally Accepted Accounting Principles): Defendants violated GAAP when Defendants improperly recognized revenue on non-functioning products, (CAC ¶ 105); failed to write-down obsolete inventory, (CAC ¶ 112); failed to properly account for goodwill impairment, (CAC ¶¶ 43, 49, 53); and failed to maintain ap-

propriate internal controls. (CAC ¶¶ 54–56, 12–121).

## DISCUSSION

### Legal Standards

*1. Rule 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) dismissal is proper only in "extraordinary" cases. *United States v. Redwood City,* 640 F.2d 963, 966 (9th Cir.1981). Courts should grant 12(b)(6) relief only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1990). Courts should not dismiss a complaint "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle [the party] to relief." *Moore v. City of Costa Mesa,* 886 F.2d 260, 262 (9th Cir.1989) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), *cert. denied,* 496 U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990). Courts must construe the complaint in the light most favorable to the plaintiff. *See Concha v. London,* 62 F.3d 1493, 1500 (9th Cir.1995), *cert. dismissed,* 517 U.S. 1183, 116 S.Ct. 1710, 134 L.Ed.2d 772 (1996); *In re Daou Sys.,* 397 F.3d 704, 709–10 (9th Cir.2005). However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a Rule 12(b)(6) motion. *See In re Syntex Corp. Sec. Litig.,* 95 F.3d 922, 926 (9th Cir.1996).

Rule 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Parks School of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995)("a complaint should not be dismissed unless a plaintiff could prove no set of facts in support of his claim that would entitle him to relief").

*2. The PSLRA*

In an effort to curtail the filing of perceived abusive lawsuits, Congress enacted the PSLRA to establish a uniform pleading standard:

### (b) Requirements for securities fraud actions

#### (1) Misleading statements and omissions

In any private action arising under this chapter in which the plaintiff alleges that the defendant—

(A) made an untrue statement of a material fact; or

(B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;

the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

#### (2) Required state of mind

In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u–4(b).

Under the heightened pleading standards of the PSLRA, *see In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 974 (9th Cir.1999), Plaintiff must (1) specify each statement alleged to have been mis-

leading and the reasons why the statement is misleading; (2) state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind; and (3) with respect to allegations made on information and belief, state with particularity facts on which the belief is formed. *See Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir.2002). Scienter is the "mental state embracing intent to deceive, manipulate or defraud." *Wharf Holdings Ltd. v. United Int'l Holdings, Inc.* 532 U.S. 588, 593, 121 S.Ct. 1776, 149 L.Ed.2d 845 (2001). Under the PSLRA, "the court must consider *all* reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs. District courts should consider all the allegations in their entirety, together with any reasonable inferences that can be drawn therefrom, in concluding whether, on balance, the plaintiffs' complaint gives rise to the requisite inference of scienter." *Gompper*, 298 F.3d at 897. The inquiry into scienter and falsity are generally inferred from the same set of facts, "and the two requirements may be combined into a unitary inquiry under the PSLRA." *Daou*, 397 F.3d at 711.

### 3. Rule 10b–5

■ To state a claim under § 10b of the Exchange Act, Plaintiff must allege that defendant (1) made a misrepresentation or omission; (2) of material fact; (3) in connection with the purchase or sale of a security; (4) with scienter; (5) that the plaintiff relied upon; and (6) causing Plaintiff to suffer damages. 15 U.S.C. § 78j(b). Rule 10b–5 claims must comply with Rule 9(b) of the Federal Rules of Civil Procedure. *See In re Daou*, 397 F.3d at 710.

**General Adequacy of the Statements**

Defendants make a generalized attack on the CAC by arguing that the CAC does not comply with PSLRA because the CAC's "structure and organization make it impossible to determine exactly what Plaintiffs are claiming was misleading and for what reason." (Motion at p. 4:12–13). The court notes that there is some appeal to this argument as Plaintiff's complaint identifies 12 pages of statements contained in press releases, analyst reports, and SEC filings. Plaintiff does not allege that all of these statements are actionable or attempt to separate the actionable statements from the non-actionable statements. This global context is not fatal to Plaintiff's CAC, however, as the present action is based upon alleged material omissions regarding, among other things, Defendants alleged failure to comply with GAAP. The accounting violations are alleged with greater specificity and permit the court and parties to analyze the alleged omissions in context of PSLRA's mandates, as more fully set forth below.

Accordingly, the court grants in part and denies in part this portion of the motion to dismiss.

**The Goodwill Impairment Allegations**

■ At the heart of Plaintiff's securities fraud CAC is the allegation that Defendants failed to timely write-down goodwill that had become impaired in relation to certain acquisitions. The $62.4 million write down for impairment in the value of the goodwill allegedly caused Remec's assets to be materially overstated. (CAC ¶ 72(a)).

The court concludes that the goodwill impairment allegations are insufficient to state a Rule 10b–5 claim under the PSLRA. The CAC fails to adequately plead falsity and scienter with the requisite degree of particularity. Plaintiff alleges that the statements in Remec's Form 10K for the fiscal year ended January 31, 2004, filed on April 15, 2004 regarding goodwill impairment writeoffs were allegedly false and misleading because (1) De-

fendants took a $62 million goodwill impairment loss as of the second quarter of Fiscal 2005, ended July 30, 2004; (2) Defendants experienced significant undisclosed internal problems with excess obsolete and missing inventory; (3) significant negative market changes in the wireless telecommunications sectors; and (4) problems with the development of the technology acquired in the Solitra, Paradigm, and Miark acquisitions. (CAC ¶ 78). These allegations are discussed in turn.

Remec's Form 10K for the fiscal year ended January 31, 2004, filed April 2004, analyzed the valuation of goodwill. (CAC ¶ 15). The analysis indicated that goodwill is tested for impairment periodically and that application of the test requires "significant judgment" including "estimating future cash flows, determining appropriate discount rates and other assumptions. Changes in these assumptions could materially affect the determination of fair value and/or good will impairment for each reporting unit" (CAC ¶ 43). The report also indicated that the majority of goodwill and other long-lived assets were attributable to the acquisitions of Solitra, Himark and Paradigm. *Id.* In the Q2 2005 Form 10–Q, Remec stated that "[t]he primary factors that contributed to the impairment assessment of the Wireless Systems reporting segment in the three months ended July 30, 2004 were continued projected losses resulting from industry overcapacity resulting in lower profit margins, and manufacturing cost reductions lagging market price decreases." (CAC ¶ 53).

In explaining the falsity of the goodwill impairment statement, Plaintiff alleges that the goodwill was overstated by $62 million; the company was experiencing "decaying" profit margins, and, among other things, the company was experiencing material internal control deficiencies. (CAC ¶ 58). As set forth in *In re Glen-*

*Fed, Inc. Sec. Litig.,* 42 F.3d 1541, 1549 (9th Cir.1994)(en banc):

> The fact that an allegedly fraudulent statement and a later statement are different does not necessarily amount to an explanation as to why the earlier statement was false.... In order to allege the circumstances constituting fraud, plaintiff must set forth facts explaining why the difference between the earlier and the later statements is not merely the difference between two permissible judgments, but rather the result of a falsehood.

Here, the CAC fails to adequately explain the nature of the fraud with respect to goodwill impairment. Plaintiff alleges that the write-down should have been taken "well before it did," (CAC ¶ 78), but does not explain how this is so. Plaintiff contends that it adequately explains "why the difference between the earlier and the later statements is not merely the difference between two permissible judgments, but rather the result of a falsehood," *id.,* because **"defendants intentionally concealed Remec's obligation under GAAP** to recognize a charge a charge for good will impairment at all time through the Class Period." (Opposition at p. 16:19–21). In other words, the goodwill impairment analysis was false because it was intentionally false. The CAC's allegations are not sufficiently particular as to falsity and scienter. The court concludes that the allegations concerning goodwill impairment fail to satisfy PSLRA's pleading requirements.

In sum, the motion to dismiss this portion of Plaintiff's claim is granted with 20 days leave to amend from the date of entry of this order.

### The Other Alleged GAAP Violations

*Revenue Recognition/Overstated Inventory*

 Plaintiff alleges that Remec falsely reported revenues by improperly recogniz-

ing revenue on sales of non-functional and zero basis products and by pulling-in future revenues into current periods. (CAC ¶¶ 59, 64–66). Based upon information obtained from confidential sources (current or former Remec employees), Plaintiff alleges that Remec schemed to give the appearance of higher gross profit by recognizing revenue on shipments of non-conforming products to customers who were unwilling to pay for the products. (CAC ¶ 65). Plaintiff alleges that some products were shipped to customers knowing that the products were non-functional or obsolete. Notwithstanding, Remec improperly reported these "non-sales" as revenue in violation of GAAP. Providing additional detail, Plaintiff alleges that the amounts of the shipments were in the "high hundreds of thousands of dollars" per customer and that there were at least two or three of these customers. (CAC ¶ 65).

"When pleading irregularities in revenue recognition, plaintiffs should allege '(1) such basic details as the approximate amount by which revenues and earning were overstated; (2) the products involved in the contingent transaction; (3) the dates of any of the transactions; or (4) the identities of any of the customers or [company] employees involved in the transactions.'" *In re Daou*, 397 F.3d at 713. Here, Plaintiff does not allege the total amount of improperly recognized revenue but does indicate that two or three customers were shipped obsolete or non-functional products in the amount of high hundreds of thousands of dollars. Plaintiff does not attempt to place the allegedly improperly recognized revenue in context or to approximate the amount of overstated earnings and revenue.[1] Moreover, Plaintiff does not identify the products at issue nor does it set forth the dates of any transactions or identify of any customers involved in the revenue recognition issue.

The court further notes that Plaintiff's generalized allegations that Defendants falsely claimed increased or strengthening demand, or that at some unidentified point in time Remec maintained over $10 million in secret quarantine accounts to track obsolete or missing inventory, or that several customers indicated declining demand, or at least uncertainties, about future "international events," (CAC ¶ 90), lack the requisite corroborating detail or context to state a claim. Plaintiff must allege more than generalized allegations of weakening demand. *See In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1085 (9th Cir.2002) (complaint must allege "contemporaneous facts in sufficient detail and in a manner that would create a strong inference that the alleged adverse facts were known at the time of the challenged statements"). Additional allegations are required to state a securities claim based upon obsolete or overvalued inventory. Further corroborating details would assist the court and

---

1. The court notes that an alleged identified amount of overstated earnings or revenues, or a write-down indicating such, would assist the parties and the court in determining whether the overstated amount is material or not. For example, Plaintiff alleges that Remec improperly recognized revenue with respect to alleged non-functional products in the amount of several hundreds of thousands of dollars. (CAC ¶ 65). However, there is no allegation that Remec made an appropriate accounting allowance for such returned products or that the amount is material in light of Remec's fiscal year 2004 revenues of $385 million. (CAC ¶ 41). Plaintiff does make a conclusory allegation, based upon a Confidential Witness's statement. (CAC ¶ 62), that the amount of overstated inventory spread amongst various businesses could "easily [be] over $10 million." Plaintiff also alleges that Remec sold "zero-value inventory" thus increasing its revenues. (CAC ¶ 61). The allegations concerning whether the inventory was maintained as over-valued or under-valued (or both) lack the specificity required to plead both falsity and scienter.

parties in analyzing Plaintiff's claims. Such allegations as the extent of the weakening demand, the approximate value of the overstated inventory, which customers cancelled orders, allegations identifying why the inventory was obsolete and when the inventory became obsolete.

Finally with respect to the improper revenue recognition and inventory issues, Plaintiff fails to adequately plead scienter. While significant violations of GAAP "can provide evidence of scienter so long as they are pled with particularity," *In re Daou*, 397 F.3d at 719, Plaintiff falls short by providing inadequate detail and context to the underlying transactions.

In sum, the motion to dismiss the Rule 10b-5 claim based upon allegations of revenue recognition and inventory deficiencies is granted without prejudice.

### Internal Control Allegations

 Plaintiff alleges that Defendants' positive statements about internal controls are actionable as Defendants failed to maintain an adequate system of internal controls. (CAC ¶¶ 118–125). Plaintiff alleges that the internal controls were deficient as to revenue recognition, inventory adjustments and goodwill. The parties recognize that there is no private right of action under § 78m(b)(2) and therefor no separate cause of action is stated under the statute.[2]

In sum, the motion to dismiss is granted with 20 days leave to amend from the date of entry of this order.

**IT IS SO ORDERED.**

---

**2.** As noted by Plaintiff, the internal control allegations may be probative of scienter.