RICHARD SEEBORG, United States District Judge
I. INTRODUCTION
Defendant Board of Trustees of the PAMCAH-UA Local 675 Pension Fund ("Board") has filed a counterclaim to recover $27,606 in pension benefits it alleges were mistakenly paid to Plaintiff Ronnie Moon. Moon moves to dismiss. For the reasons that follow, Moon's motion is granted and the Board's counterclaim is dismissed without leave to amend.
II. BACKGROUND[1]
The Defendant/Counter-Claimant Board is the Plan Administrator for a pension fund ("Fund") which provides benefits to certain individuals covered by labor-management agreements between contributing employers and Local 675 of the United Association of Journeyman and Apprentices of the Plumbing and Pipefitting Industry. The PAMCAH-UA Local 675 Pension Fund Summary Plan Description and Pension Plan Rules and Regulations *1195 ("Plan") sets forth the rules under which benefits are provided. These include that a participant who has retired is eligible to receive a pension when: (a) he is at least 60 and has attained "vested status"; or (b) he has attained "Normal Retirement Age." Specific subsections of the Plan define "vested status" and "Normal Retirement Age" at a level of detail not relevant to disposition of this motion.
Between 2005 and 2013, Plaintiff Ronnie Moon worked for employers covered by agreements with Local 675. Accordingly, those employers made contributions to the Fund on his behalf. In 2012, Moon turned 65. Approximately one year later, in September 2013, he applied for pension benefits. In February 2014, the Board approved Moon's retirement application and, shortly thereafter, the Fund sent Moon an initial check for $4,494, equal to seven monthly payments. It then proceeded, from April 1, 2014 to March 1, 2017, to disburse thirty-six monthly payments which, when added to the initial payment, totaled $27,606.
In March 2017, the Board determined the initial approval of Moon's retirement application had been erroneous because Moon did not meet the Plan's vesting and normal retirement age requirements. In a letter dated March 31, 2017, the Board informed Moon that he had been awarded benefits he was not eligible to receive, that no future payments would be made, and that he would be required to repay the $27,606 disbursed in error.
After receiving the letter, Moon asked the Board to reconsider its decision. He explained that he was living on just social security and pension payments and losing the payments would "really put [him] in a bind." In a letter dated June 22, 2017, the Board told Moon it had deliberated about his request and had concluded: (a) no future payments would be made; but (b) Moon would not be required to reimburse the Fund for the $27,606 paid to him by mistake. Because the text of the letter is critical to the decision issued herein, it is included in its entirety below:
Re.: Trustee Confirmation on Pension Overpayment
Dear Mr. Moon,
I presented your appeal notice dated April 14, 2017 to the Board of Trustees of the PAMCAH-UA Local 675 Pension Fund ("Fund"). Your appeal relates to my letter to you dated March 31, 2017 (attached) advising you that since it was discovered that you did not meet the eligibility requirements for pension benefits that were paid to you in error from March 10, 2014 to March 1, 2017, the Trustees made a decision to stop Pension benefit payments to you and ask that you reimburse the Fund for payments made to you in error in the amount of $27,606.00.
Your appeal requested that your Pension benefit payments continue despite verification that you did not meet the eligibility requirements to receive Pension benefits. After much deliberation, the Trustees have concluded that effective April 1, 2017, no future Pension benefit payments can or will be made to you because they have a legal duty to use Fund assets as required by the Fund to pay Pension benefits only to Participants in the Fund who meet eligibility requirements. Since the Fund made an error in starting Pension benefit payments to you, the Trustees decided that they will not require that you reimburse the Fund for the overpayments made from March 10, 2014 to March 1, 2017 amounting to $27,606.00.
We again sincerely apologize for any inconveniences this may cause you.
Sincerely,
Erinn L. Liu *1196 Administrator
See Scott Decl. (Dkt. No. 33), Ex. 5.
On January 22, 2018, Moon filed this suit against the Board seeking, among other things, reinstatement of his pension payments and attorney fees and costs. On April 20, 2018, the Board filed its counterclaim. Moon moved to dismiss. Instead of opposing that motion, the Board filed the Amended Counterclaim now at issue.
III. LEGAL STANDARD
A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing Bell Atlantic v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This standard asks for "more than a sheer possibility that a defendant acted unlawfully." Id. The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." Id. at 679, 129 S.Ct. 1937.
A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. See Parks Sch. of Bus., Inc. v. Symington , 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." UMG Recordings, Inc. v. Shelter Capital Partners LLC , 718 F.3d 1006, 1014 (9th Cir. 2013). When evaluating such a motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Knievel , 393 F.3d at 1072. If dismissal is warranted, leave to amend should be granted unless it is clear that amendment would be futile. See Steckman v. Hart Brewing, Inc. , 143 F.3d 1293, 1298 (9th Cir. 1998).
IV. DISCUSSION
Moon advances three arguments in favor of dismissal: (1) the Board does not state a cognizable claim under ERISA § 502(a)(3) because Moon did not violate any provision of ERISA or the Plan; (2) the Board has failed to allege a factual basis authorizing "appropriate equitable relief" under Section 502(a)(3); and (3) even if the Board could assert a claim for relief, it explicitly waived its right to seek recovery of the benefits it previously paid to Moon. Because Moon's waiver argument has merit, the other arguments need not be reached.
"A waiver occurs when a party intentionally relinquishes a right or when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." Salyers v. Metro. Life Ins. Co. , 871 F.3d 934, 938 (9th Cir. 2017) (citation and internal quotation marks omitted). The doctrine of waiver "looks to the act, or the consequences of the act, of one side only." Intel Corp. v. Hartford Accident & Indem. Co. , 952 F.2d 1551, 1559 (9th Cir. 1991) (internal citations and question marks omitted).
Here, the primary document both parties agree is pertinent to the issue of waiver is the letter the Board sent to Moon on June 22, 2017. That letter stated: "Since the Fund made an error in starting Pension benefit payments to you, the Trustees decided that they will not require that *1197 you reimburse the Fund for the overpayments made from March 10, 2014 to March 1, 2017 amounting to $27,606.00." The letter further states that the Board's decision was reached "after much deliberation" and in spite of the Board's verification that Moon "did not meet the eligibility requirements to receive Pension benefits."
Viewed together, these statements are a clear and intentional waiver of the Board's right to recover the pension payments it mistakenly paid to Moon. They show the Board knew-based on its reading of the Plan-that Moon was not eligible for benefits and that it could pursue recovery of the earlier payments on that basis. Nonetheless, "after much deliberation," the Board decided not to attempt to enforce the legal right it believed it possessed.
The Board attempts to avoid this conclusion by arguing the June 22 letter was instead an offer which Moon did not accept-i.e., the Board's agreement not to pursue recovery was contingent on Moon's agreement not to challenge the Board's refusal to pay future benefits. In support of this position, the Board argues a contingent approach made sense based on its assessment of the costs and benefits to the Fund of pursuing recovery. As long as Moon did not challenge the cessation of payments, the cost of attempting to recover the mistaken payments outweighed the benefits to the Fund. Once Moon filed suit, however, the calculus changed.
The approach the Board proposes may well have been a better one to take. The problem (for the Board) is that there is no language in the letter which reasonably supports interpreting it as a "contingent offer." The words "offer" and "contingent" do not appear in the letter. There is no explicit statement that the Board's decision not to pursue recovery depends on Moon accepting the cessation of payments without challenge. Indeed, there is nothing whatsoever in the letter indicating Moon is expected or required to provide a response.[2] If anything, the letter gives the exact opposite impression: the Board has considered the information available, it has weighed its options, and it has reached a final decision about an appropriate course of action that will not be altered by further input from Moon.
This is waiver under the Ninth Circuit's definition in Salyers and the Board's arguments to the contrary are unpersuasive. Given that: (a) the Board has already amended its counterclaim once since Moon raised the issue of waiver in his first motion to dismiss; and (b) no additional allegations by the Board could alter the contents of the letter or the interpretation outlined above, further amendment appears futile.
V. CONCLUSION
Moon's motion is granted. The Board's counterclaim is dismissed without leave to amend.
IT IS SO ORDERED .

The factual background is based on the averments in the Amended Counterclaim (Dkt. No. 32), which must be taken as true for purposes of this motion, as well as materials incorporated by reference. See Knievel v. ESPN , 393 F.3d 1068, 1076 (9th Cir. 2005).

It would not have been difficult for the Board to include language indicating the letter constituted a contingent offer if that is truly what the letter was meant to be. Even the simple insertion of "at this time" before "[the Board] will not require you to reimburse the Fund" would have flagged that the decision was subject to change and not a full relinquishment of the right to pursue recovery.